37 C.C.P.A. (Patents)

Application of TAYLOR.

Patent Appeal No. 5714.

United States Court of Customs and Patent Appeals.

June 30, 1950.

Adams, Forward & McLean, New York City (L. D. Forward, New York City, C. M. Fisher, Washington, D. C., R. T. McLean, New York City, Lawrence D. Dibble, Chicago, Ill., and S. H. Brown, Jr., New York City, of counsel), for appellant.

E.L.Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting all of the claims 1 to 9, inclusive, of a patent application, Serial No. 572,421, filed January 11, 1945, for "Improvement in Chemical Manufacture."

Claims 2 and 6 were rejected as not readable on the elected species and are therefore not before us on their merits. All of the other claims were rejected as not being patentable over the cited prior art, as follows: Allen 1,098,006 May 26, 1914; Tranin et al. 1,945,102 Jan. 30, 1934; Evans (Australian) 116,149 Nov. 25, 1942.

Claim 3 is illustrative of the subject matter of the rejected claims and reads as follows: "3. A process for the preservation of comestible materials of the non-cereal type and which normally contain high proportions of water whereby contaminating micro-organisms are eliminated without deleteriously affecting the taste, odor and nutritional value of the comestible material, which comprises submerging the comestible material in an aqueous solution of chlorine dioxide."

The application relates to a process for the preservation of comestible, perishable materials of a non-cereal type normally containing high proportions of water, such as meat, fish, vegetables, fruits and the like. In the process, the foodstuffs are treated with a chemical known as chlorine dioxide, the molecules of which consist of one atom of chlorine in chemical combination with two atoms of oxygen. It is said that the application of chlorine dioxide effectively eliminates the contaminating micro-organisms which cause foodstuffs containing a high percentage of moisture to deteriorate or spoil. It is claimed that by the use of appellant's process, as aforesaid, the food is not affected in taste, odor or nutritional value and is not bleached.

The patent to Allen is concerned with a process of preserving fruit substances, such as fruit pulps and juices, the pulps and juices of vegetables, finely divided vegetable substances and grated meats, but more particularly, tomato pulp and apple pulp. It is stated in the patent that its object is to introduce a harmless antiseptic material into the foodstuffs and that after such treatment no trace of the antiseptic material will remain and no injurious product will result. In the process of the patent, the edible substances have added to them an amount of arsenic-free hydrochloric acid equaling about four-tenths of one per cent of the material to be treated. That amount of acid is said to be twice the quantity present in human gastric juice, but that proportion may vary from one per cent to one-tenth of one per cent, according to the material upon which it is used. The hydrochloric acid is said to render the food to which it is applied practically sterile for a long period of time. The material is further treated for the preparation of marketable food by adding an amount of arsenic-free sodium bicarbonate or sodium carbonate to neutralize the acid. When such neutralization has taken place, the food is said to have only a slight admixture of common salt, the water which is added being negligible and the carbon dioxide passing off freely.

The Tranin et al. patent relates to a method of treating food products normally supporting micro-organisms. The process is said to reduce the activity of such organisms. The principal object of the in-

vention, in reducing the undesired effect of bacteria on food and like products without deleteriously affecting the natural qualities thereof, is accomplished by employing a fluid and/or radiant germicidal agents. The particular object of the invention reads as follows: "More particularly our invention consists in applying a fluid germicidal agent to a translucent food product to destroy a substantial proportion of microrganisms associated with the product, passing the product and portions of the agent associated therewith in a relatively thin stream between lamps emitting ultra violet rays to effect destruction of organisms not acted on by the fluid agent and stimulate the activity of vitamines, heating the moving stream to promote rapid evaporation of the fluid agent, and effecting removal of vapors without exposing the food to air."

The chemical treating agent disclosed in the patent consists of germicidal gas or volatile liquid or solid, harmless to the foods in which it is placed. Among such substances are hydrogen peroxide, ozone, and halogens, including chlorine, bromine and iodine, which are made to permeate the body of the liquid food and bubble therethrough. It is stated that the chlorine gas in small amounts has substantially no chemical effect on the food and is associated therewith long enough while moving through the patentee's apparatus to obtain a maximum effect for the proportional amount of chlorine used. If the chlorine in the food stream is insufficient to sterilize completely the food, the ultra violet rays through which the mixture passes will destroy substantially the bacteria unaffected by the chlorine. It is said that the gas, together with the ultra violet rays, produces that result and that a temperature of about 100° Fahrenheit, which is maintained throughout the process, together with the radiant element, compensates for any deficiency or excess of chlorine. The claims of the patent all define a method of treating foods which includes both the introduction of the germicidal agent and the ultra violet rays.

The Australian patent relates to "Improvements relating to the treatment of wheat, rye and other cereals and their milling products." The patentee states that the purpose of the treatment is to improve the quality and color of flours obtained from the cereals and also to bleach bran. It is acknowledged in the patent that in the milling industry flour may be bleached by the use of a variety of chemicals and that such bleaching is probably due to the conversion of the carotene or related yellow coloring matter of the flour to the oxidized or addition compound which is colorless. It points out that it was known to bleach bran and wheat with sulpher dioxide or stannous chloride which are chemical reducing or oxygen removing agents, but when bran is effectively bleached, the endosperm (the nutritive tissue formed within the embryo sac in seed plants) is spoiled for baking purposes when the bleaching agents are applied to the whole grain. The patentee states that in his process the whole wheat or the bran is treated with oxidizing agents in the presence of moisture whereby the product is bleached and the baking properties of the endosperm are not affected. The bleaching agent disclosed may consist of oxides of chlorine, either chlorine dioxide in gaseous form or in solution of chlorine monoxide in gaseous form, or in a solution of hypochlorous acid or hypochlorites. In the patentee's process the wheat is dampened with a solution of the bleaching gas or by the bleaching gas in water with which the wheat is washed, or by applying the bleaching gas to the wet wheat after washing. It is stated that care must be taken to insure against injury to the endosperm by the gas so that the only bleaching is of the pigment found in the husk of the grain. It is said that the wheat or other cereal subjected to the process of the patent is sterilized and the possibility of the occurrence of "rope" in bread is avoided. The amount of the oxidizing agent used depends on the extent of the bleaching intended, but must be in sufficient quantity to bleach to the color of what is known as "white wheat." The seven claims of the patent all refer to the bleaching of the cereal substances.

The Primary Examiner, in his statement, rejected the involved claims as lacking

invention over the Australian reference for the reason that the reference discloses the use of chlorine dioxide in bleaching and sterilizing cereal products and flour. He held that he could not perceive invention in applying a known sterilizing agent to food products other than cereals. The examiner then observed that the sterilization and preservation of perishable food products by means of chemicals is well known, as instanced by the Allen and Tranin et al. patents and therefore he did not consider invention would be involved in using chlorine dioxide in like relationship. He held it to be obvious that in selecting a sterilizing agent for food products one would have to be selected which would not affect the comestible material to its detriment and that the limitation in the claims "without deleteriously affecting the taste, odor and nutritional value of the comestible material" did not impart patentability. Because he considered that the preservation and sterilization of various types of food by means of chemicals is old in the art, as shown in the Allen and Tranin et al. references, he held that it would be obvious to one skilled in the art to use chlorine dioxide in any type of food.

The board, in its decision, did not find reversible error in the action of the Primary Examiner and stated that where, in the prior art, there is suggestion of the trial of a process, invention is not involved in trying it and to discover that it is successful, citing In re Lake, 156 F.2d 237, 33 C.C.P.A., Patents, 1168.

Counsel for appellant petitioned the board for reconsideration of its decision, alleging that the board apparently believed that the Australian patent related primarily to sterilizing wheat and that the bleaching thereof was incidental. That allegation was based upon a portion of the board's decision in which it was stated that the patent "* * * describes treatment of wheat or other cereals with chlorine dioxide either in a gaseous form or in solution. The gas may be added to the water used in washing the wheat. It is stated that the wheat so treated is sterilized and the possibility of

occurrence of rope in bread made from the wheat is avoided. Improved color of wheat is noted by patentee."

In the petition it was argued that the purpose of the Australian patentee was to bleach wheat and that when the bleaching had been effected it was noted that the wheat was sterilized. Counsel contended that their interpretation is correct and the difference between it and the interpretation placed upon the Australian patent by the board is crucial for the reason that the patentee had for his primary object the using of the well known property of chlorine dioxide to decompose organic coloring matter such as carotene. Counsel then observed that carotene is the source of vitamin "A" in foodstuffs and that its destruction deleteriously affects the nutritional value of foodstuff, whereas all of appellant's claims for preserving foodstuffs called for such preservation "without deleteriously affecting the taste, odor and nutritional value" thereof.

Counsel for appellant challenged the decision of the board with respect to its statement that the Tranin et al. patent embraces the subject matter of the involved claims because it recites the use of chlorine gas for treating liquid substances. It was pointed out in the petition that chlorine and chlorine dioxide are different in that the latter does not contain elemental chlorine and does not behave in the same way. They quoted the description of chlorine dioxide as found in the Encyclopaedia Britannica, wherein it is stated that the chemical is "a very powerful oxidant." They further pointed out that Mellor in a treatise on Inorganic and Theoretical Chemistry, 1927, Vol. II, presents a section, which is of record here, on the singular behavior of chlorine dioxide. It is stated in that authority that the chlorine dioxide may be prepared by a reaction between potassium chlorate and sulphuric acid in which reaction all traces of organic matter must be excluded. The author points out that "Chlorine peroxide is a powerful oxidizing agent—a piece of phosphorus, sulphur, sugar or other combustible takes fire spontaneously in the gas, or produces an explosion. * * * Indi-

go, litmus, and other organic colouring agents are decolorized by chlorine dioxide."

The board considered appellant's petition for reconsideration but refused to change its original decision.

As far as the record is concerned there is nothing to show that any one had ever before appellant's disclosure used or suggested a process by means of which comestibles containing large quantities of water could be sterilized and preserved by the use of chlorine dioxide without at the same time bleaching the substance processed or changing it in taste, odor or nutritional properties. Therefore, appellant's process is novel.

Neither has there been a suggestion of the treatment of perishable foodstuffs such as apparently was first conceived and practiced by appellant. Chlorine dioxide has long been known as a powerful oxidizer which would decolorize organic coloring agents, as shown by Mellor.

In the Australian patent, cereals are shown to be bleached by the use of chlorine dioxide and such bleaching was accomplished by converting the carotene, or related yellow coloring matter, into colorless compounds. We think it fair to infer that everything which was known about chlorine dioxide would lead one to believe that when applied to foodstuffs it would bleach them. We do not think it reasonable to hold that chlorine dioxide, as used in the Australian patent, would sterilize the cereal but not bleach it. The use of that powerful oxidizing agent in the process of bleaching certainly would destroy micro-organisms at the same time, but we are unable to understand how it could be that such organisms could be killed without bleaching.

It is pointed out in the brief of appellant that in the involved application it is noted that "Particularly, tests have indicated that it has no effect on the ascorbic acid content." It is stated in Chemistry of Organic Medicinal Products, 2nd Edition,

by Jenkins and Hartung, at page 276, that "ascorbic acid is one of the least stable vitamins and may be largely destroyed in the canning of foods." That is because it oxidizes very easily. However, when chlorine dioxide is applied to foods containing large proportions of water, as is disclosed in the process of appellant, it has no effect on the ascorbic acid content. That action is quite different than the action shown in the Australian patent of chlorine dioxide in its effect on carotene contained in the cereal.

The improvement of color of wheat processed in accordance with the Australian patent clearly can mean nothing more, as has hereinbefore been noted, than that the wheat be of white color. We are of opinion that the tribunals of the Patent Office erred both in their interpretation of the Australian patent and its application to the present issue.

It may be noted that the process of the Allen patent treats the aqueous food substances with hydrochloric acid and then neutralizes such acids with sodium bicarbonate so that it is converted into ordinary table salt. We find nothing in that patent to anticipate or to teach one skilled in the art the process of appellant.

The sterilization shown in the Tranin et al. patent is obtained by two different operations, one of which involves the use of a germicidal agent and the other the utilization of ultra violet light, each of which cooperates with the other to kill all of the micro-organisms in the food.

We find nothing in the Tranin et al. patent which would suggest to one skilled in the art the use of chlorine dioxide as is claimed by appellant.

We find nothing in any of the references singly or together which, in our opinion, would make it obvious to one skilled in the art to do as appellant has done, and for the reasons hereinbefore set out, the decision of the Board of Appeals is reversed.

Reversed.